UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-312 (JEB) |
| v. : | |
| : | |
| ELIZABETH ROSE WILLIAMS, : | |
| : | |
| **Defendant** : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter.[1] For the reasons set forth herein, the government requests that this Court sentence Defendant Elizabeth Rose Williams to three years of probation with a special condition of 30 days of home detention, 60 hours of community service, $500 in restitution, and a special assessment of $10.

### I.      Introduction

Defendant Elizabeth Rose Williams, a 35-year-old musician and business owner, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[2]

---

[1] The government's memorandum is redacted pursuant to its motion for leave to file its memorandum under seal (ECF No. 168).

[2] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

1

Williams pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by the defendant: (1) taking photos and videos inside and around the Capitol; (2) disregarding the violence and chaos on the Capitol grounds; (3) entering the Senate Gallery – a particularly sensitive area of the Capitol building; (4) and spending nearly 30 minutes inside the building.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Williams' crime ██████████████████████████████████████ ██████ support a sentence three years of probation with a special condition of 30 days' home detention.

## II.  Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 62.

*Defendant Williams' Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Elizabeth Williams and her then-boyfriend Bradley Bennett traveled from Kerrville, Texas to Washington D.C. to attend the "Stop the Steal" rally. On January 6, Williams started the morning with a group of people and as she made her way towards the Ellipse,

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

she continuously filmed events on her phone. She wore a black jacket, red hat, white gloves, and blue jeans.

At approximately 12:44 p.m., Williams, joined by Bennett, made her way to the Peace Circle. At around 1:00 p.m., rioters broke past barriers and the police line on the Pennsylvania walkway near the Peace Circle. Williams and Bennett followed the crowd and moved closer to the Capitol building.

Williams and Bennett went to the West Plaza of the Capitol, where officers had formed a protective line behind a line of metal barricades. They watched as other rioters breached those barricades and the police line. They witnessed officers discharging tear gas and chemical irritants and observed officers physically attempting to move rioters from the restricted area. Williams filmed most of the encounters. *See* Exhibit 1[3]. Ignoring the numerous and clear signs that she should not be on the Capitol grounds, at approximately 2:23 p.m., Williams entered the Capitol building through the Senate Wing Door as an alarm blared overhead. *See* Image 1 and Exhibit 2. Williams filmed herself celebrating soon after entering the building. *See* Image 2 and Exhibit 3.

---

[3] This video was taken by Williams of the West Front as her and other rioters breached a police line. It is attached as Exhibit 1.



*Image 1: Still Image from CCTV of Williams Entering the Capitol Building through the Senate Wing Doors at Approximately 2:23 p.m.*



*Image 2: Still Image From a Video Williams Took of Herself Celebrating Inside the Capitol (Exhibit 3 at 00:51)*

Once inside the Capitol, Williams walked through the Crypt – already overrun by rioters, then moved to the Rotunda, where she posed for photos and prayed with other rioters. *See* Images 3-4.


Image 3: Still Image of Williams (Circled in Red on the Right) and Bennett (on the Left) Inside the Rotunda


Image 4: Williams Posing for Photos Inside the Rotunda (Exhibit 4 at 00:15)

After exiting the Rotunda, Williams walked past a door near the East side of the Rotunda – a door which would have led her outside of the building. Instead of exiting, Bennett decided to remain inside the Capitol and went to the Senate Gallery. While in the Senate Gallery, Williams continued to film on her phone and left after approximately two minutes with Bennett. *See* Images 5-6.



*Image 5: Still Image from CCTV of Williams and Bennett Entering the Senate Gallery at Approximately 2:43 p.m.*



*Image 6: Still Image from CCTV of Williams and Bennett Leaving the Senate Gallery at Approximately 2:45 p.m.*

While on the east side of the Capitol, Williams stood near an exit door looking out to the crowd on the East Plaza of the Capitol. *See* Images 7-8. Instead of exiting, both Williams and Bennett chose to remain inside the Capitol and both went to the first floor. Once they were on the first floor, Williams encountered officers and was instructed to leave.



*Image 7: Still Image from CCTV of Bennett and Williams Looking through Exit Door onto the East Plaza and Turning Back Into the Building*



*Image 8: Still Image from CCTV of Bennett and Williams Looking through Exit Door onto the East Plaza and Turning Back Into the Building*

At approximately 2:50 p.m. Williams and Bennett exited the Capitol through the Senate Wing Doors – after spending nearly 30 minutes inside. *See* Image 9. After leaving the Capitol, Bennett and Williams made a video on the West Lawn. Williams agreed with Bennett and stated that they went inside the Capitol and everything was "peaceful"; this is belied by the violence they observed before entering the building and the chaotic scene they encountered once inside the Capitol. *See* Image 10 and Exhibit 5.

7



*Image 9: Still Image from CCTV of Williams and Bennett Leaving the Capitol building at approximately 2:50 p.m.*



*Image 10: Still Image from Video of Williams and Bennett Speaking After Exiting the Building (Exhibit 5)*

*The Charges and Plea Agreement*

On April 21, 2021, the United States charged Williams by an Indictment with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). On February 3, 2022, pursuant to a plea agreement, Williams pleaded guilty to Count Six of the Indictment, charging her with a violation of 40 U.S.C. § 5104(e)(2)(G).

### III.     Statutory Penalties

Williams now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). The defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of three years of probation with a condition of 30 days of home detention, and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Williams' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Williams, the absence of violent or destructive acts is not a mitigating factor. Had Williams engaged in such conduct, she would have faced additional criminal charges.

Some of the most important factors in Williams' case was her complete disregard for the violence and chaos around her, her decision to stay inside the building even after approaching and seeing the exit, her entry into various areas of the Capitol, including the Senate Gallery, and her willingness to distort the truth in a video immediately after leaving the building.

### B. Williams' History and Characteristics

As set forth in the PSR, Williams does not have a criminal history, nor substance abuse or mental health issues. ECF No. 69 ¶¶ 30 58, 60. Williams has been compliant with her conditions of pretrial release. *Id.* at ¶ 12.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

10

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of some period of home detention. The government acknowledges the fact that Williams pled guilty early in the case, expressed remorse for her actions, ███████████████████████████████████████████████████████. These mitigating factors are part of the basis of the government's recommendation for home detention and *not* incarceration.

Williams and Bennett both did not accept the results of the 2020 presidential election. On January 6 they went to the Capitol, extensively filmed their route through the Capitol building, including their entrance into a highly sensitive area - the Senate Gallery. They witnessed chaos and violence, and yet chose to remain inside the Capitol. When Williams approached an exit and had the opportunity to leave, she stayed. After finally exiting the Capitol building, she distorted reality in a public way, claiming to an interviewer that the riot had been "peaceful." The Court must sentence Williams in a manner sufficient to deter her specifically, and others generally, from following others and going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[4] This Court must sentence Williams based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Williams has pleaded guilty to Count Six of the Indictment, charging her with Parading, Demonstrating, and Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor, 18 U.S.C. § 3559, and therefore, the sentencing guidelines do not apply. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol. A defendant's entry into a sensitive space, such as the Senate Floor or a member's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway. Williams went inside the Senate Gallery – a sensitive area of the Capitol.

In *United States v. Richard Barnard*, 21-CR-235 (RC), Barnard entered the U.S. Capitol building with a large crowd of rioters and, similar to Williams, he was well aware of the fact that he was not authorized to be inside the building. Barnard penetrated into the Crypt portion of the U.S. Capitol, where violence between rioters and law enforcement was occurring around him, and

he admitted to deleting evidence from his phone. Similar to Williams, the defendant had several mitigating factors in his case ███████████████████████████████████, and his entering into a plea agreement at the first available opportunity. The defendant was sentenced to 30 days' home detention in this matter. While Williams has a number of aggravating factors here, 30 days' home detention does take into account ███████████████████████ ███████████████████████████████, her remorse, and her early plea.

In *United States v. Brandon Straka*, 21-cr-579 (DLF), the defendant pled guilty to 40 U.S.C. § 5104(e)(2)(D) – a class B misdemeanor. The court imposed a sentence of 3 months' home detention due to Straka's actions on January 6. Straka had a number of aggravating factors in his case which are different than in the instant case, including his social media presence, a number of social media posts, and his encouragement of rioters to engage in disorderly and violent conduct on January 6. However, █████████████████████████████████████ ██████████████████████████████████████████████████████████ While Williams ████████████████████████████ warrants a sentence of home detention in this matter.

While both Williams and Bennett went inside the building together and witnessed the same chaos and violence, Bennett posted a number of messages on his social media accounts indicating his intent to stop the certification process and his willingness to use violence as a means to achieve this end. Williams' conduct is less egregious and therefore warrants a different sentence.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Williams must pay $500 in restitution, which reflects in part the role Williams played in the riot on January 6.[6] Plea Agreement at ¶ 10. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $1,495,326.55" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of May 2021." *Id.* (As noted above in footnote 2, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Williams's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 23.

More specifically, the Court should require Williams to pay $500 in restitution for her convictions on Count Six. This amount fairly reflects Williams' role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, five hundred dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was convicted of only misdemeanors and not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VI.    Fine

The defendant's convictions for a violation of 40 U.S.C. § 5104(e)(2)(G) subject her to a statutory maximum fine of $5000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial

---

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR ¶ 78.

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Williams to 30 days' home detention as a condition of 36 months of probation, $500 in restitution, 60 hours of community service, and a special assessment of $10. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Williams' liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *Nialah S. Ferrer*
NIALAH S. FERRER
Assistant United States Attorney
New York Bar No. 5748462
United States Attorney's Office
District of Columbia
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
nialah.ferrer@usdoj.gov